(86 App. Div. 524.)

PEOPLE v. RYAN.

(Supreme Court, Appellate Division, Second Department.　July 24, 1903.)

1. INTOXICATING LIQUORS—SUNDAY LAW—EVIDENCE.

Evidence on trial of a barkeeper holding a liquor tax certificate for a violation of Laws 1897, p. 234, c. 312, § 31, subd. "g," making it unlawful for a barkeeper to admit on Sunday persons other than members of his family or servants to the room where liquors are sold or kept for sale, examined, and *held* insufficient to support a conviction, in failing to show that the persons in the barroom were not defendant's servants, admitted in the course of their employment.

Appeal from Court of Special Sessions of City of New York.

Henry Ryan was convicted of crime, and appeals.　Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, HIRSCHBERG, and HOOKER, JJ.

J. Arthur Hilton, for appellant.

JENKS, J.　The defendant, a barkeeper of the holder of the certificate, was charged with violation of the liquor tax law (Laws 1897, p. 234, c. 312), and was tried for the violation of subdivision "g" of section 31 thereof, in that on Sunday "persons other than members of his family or his servants for purposes not forbidden were admitted to a room where liquors were sold or kept for sale."　He was convicted, one of the justices voting for his acquittal.　There were four men in the room when the arrest was made.　There is no question of the right of the holder of the certificate to use the room for the purpose of furnishing beverages to his waiters for service in the dining or reception room adjoining, or that he was so engaged in response to orders from a large number of persons, who were his guests.　The burden was, therefore, on the people to prove beyond a reasonable doubt that the four men in question were not employés of the holder of the certificate, admitted in the course of their employment.　People v. Owens, 148 N. Y. 648, 43 N. E. 71.　The witnesses for the people were two police officers, of whom one followed him making the arrest.　The officer who made the arrest testifies that he saw four men besides defendant and Coogan, a clerk of the proprietor, then engaged in his business, then standing at the bar, and that the defendant made no answer to his inquiry as to what these men were doing. He testifies that something was drunk in his presence, and that there were no waiters with waiters or trays in their hands at the time of the arrest.　He testifies that the four were clad in street clothes, with hats on their heads, and without badges or waiters' coats; that he did not ascertain or inquire who they were, but that none of them, on being told by him to leave, said that he was an employé.　He further testifies, referring to the four men, that "guests" were in the barroom, but the avowed reason for his characterization is "only their actions in front of the bar."　And on rebuttal he testifies, "I don't know whether these men who were in the barroom were employés of Mr. Ackron or not, only from their actions in going out."　The other officer testifies that he saw four men in street costumes, with their hats

on; that there were glasses on the bar, but he did not see any drinking, though he heard a cash register ring. The testimony of the defendant is that he was engaged in meeting the orders of the waiters for service in the dining or reception room; that he supplied the various drinks in glasses, and thereupon received, as was the custom, payments therefor from the waiters. He testifies that the four men were waiters, and named them, save one, whom he described as an "extra," who had come in with Howell for service on Sunday, which was a day of large traffic, especially at that hour, 8 o'clock in the evening. He testifies that three of the waiters had theretofore been employed in this place for periods varying from 6 to 14 months, and that at the time of the arrest he told the officer that these men were waiters. He testifies that the uniform of the waiters at the place did not include an apron, but that they wore "Tuxedos," which I understand to be a popular term for dark jackets, and badges. He admits that two of the men wore hats, but says that they had just come in to attend to the increased traffic, which was natural at that time, and that they were about to place their hats and coats in the place near the bar set apart for that purpose. He is substantially corroborated by two of the four men, by the clerk, Coogan, and partially by the manager of the place. He explains the absence of Howell, the other alleged waiter. The barroom was in plain view from outside, for its large windows were unscreened. In People v. Owens, supra, O'Brien, J., says:

"The facts and circumstances proved in support of the charge were suspicious, but suspicion is not proof, and no one had the right to say that they were inconsistent with innocence, since any or all of them could exist without the commission of the offense with the defendant is charged."

The room was in use for a lawful purpose, and that purpose justified—nay, required—at the time the admission of servants of the proprietor in his service. The proprietor employed a considerable number of men as waiters. Therefore there was nothing suspicious in the mere presence of men in that room. Neither does it appear that for the sake of traffic the proprietor or his servants were compelled, at the risk of a violation of the law, to serve strangers in that room, for the evidence is clear that the traffic was openly carried on in the large adjoining room without let or hindrance. Aside from the indefinite expression of one policeman that there was "something drunk in his presence"—by whom does not appear—the case of the people mainly rests upon the apparel of the four men, and upon their "actions in going out" when ordered by the police. When weighed against the testimony on behalf of the defendant, both direct and explanatory, it is not sufficient to sustain the judgment of conviction.

The judgment should be reversed, and new trial ordered. All concur.